**Robert J. BRADY, Individually and on behalf of Democratic Executive Committee of Philadelphia and Vito F. Canuso, Jr., individually and on behalf of Republican City Committee, Petitioners**

v.

**Pedro A. CORTÉS, Secretary of the Commonwealth and Harry A. Vansickle, Commissioner of Elections, Respondents.**

Commonwealth Court of Pennsylvania.

Heard April 6, 2005.
Decided April 8, 2005.
Publication Ordered April 20, 2005.

Gregg R. Melinson, Philadelphia, for petitioners.

Susan J. Forney, Chief Deputy Attorney General, Harrisburg, for respondents.

Gregory E. Dunlap, Harrisburg, for amicus curiae.

OPINION BY Senior Judge KELLEY.

This opinion is filed in support of this Court's order of April 6, 2005 granting the Petition for Review and Writ of Mandamus filed in our original jurisdiction by Robert J. Brady, individually and on behalf of the Democratic Executive Committee of Philadelphia and Vito F. Canuso, Jr., individually and on behalf of the Republican City Committee (collectively, Petitioners), seeking to compel Pedro A. Cortés, Secretary of the Commonwealth and Harry A. Vansickle, Commissioner of Elections (collectively, Respondents) to declare the seat of the Honorable Gene D. Cohen, Judge of the Court of Common Pleas of Philadelphia County, to be vacant and to direct that the vacancy be filled through the 2005 Municipal Primary and Municipal General Elections.

The facts of this case are not in dispute. On December 9 and 10, 2004, *The Legal Intelligencer* reported that Judge Cohen had publicly announced his intention to resign his commission as judge on the Court of Common Pleas of Philadelphia County. On January 20, 2005, Judge Cohen submitted a letter to Governor Edward G. Rendell resigning his office effective 12:01 a.m. on March 1, 2005.

On February 1, 2005, Zygmont A. Pines, the Court Administrator of Pennsylvania, sent Governor Rendell a letter confirming the vacancy that was to occur in the Court of Common Pleas of Philadelphia County as a result of the resignation of Judge Cohen as of the close of business on February 28, 2005. Mr. Pines' letter also stated that Judge Cohen's term of office was to expire on January 3, 2010. ·

On February 3, 2005, the Director of the Governor's Office of Public Liaison, Robert J. Clark, sent Judge Cohen a letter acknowledging the Governor's receipt of Judge Cohen's letter of resignation. Mr. Clark's letter also stated that the resignation had been officially recorded, effective February 28, 2005.

On February 11, 2005, the Respondent Secretary announced his determinations regarding the offices to appear on the ballots for the 2005 Municipal Primary and Municipal General Elections.[1] The Respondent Secretary did not certify the seat, then held by Judge Cohen, for inclusion on the ballots for the 2005 Municipal Primary and Municipal General Elections.

On March 11, 2005, Petitioners filed the instant Petition for Review and Writ of Mandamus seeking to compel the Respondents to declare the seat of Judge Cohen to be vacant, and to direct that the vacancy be filled through the 2005 Municipal Primary and Municipal General Elections.[2]

On March 24, 2005, pursuant to Section 916 of the Pennsylvania Election Code[3], the Respondent Secretary certified to the Philadelphia County Board of Elections the twenty-six (26) qualified candidates for the seven (7) seats on the Court of Common Pleas of Philadelphia County that were to appear on the 2005 Municipal Primary and Municipal General Election ballots for Philadelphia County. More specifically, the Respondent Secretary certified that there were twenty-six (26) candidates to appear on the 2005 Democratic Municipal Primary Election ballot, nine (9) of whom cross-filed to appear on the 2005 Republican Municipal Primary Election

---

1. _See_ Section 903 of the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, _as amended_, 25 P.S. § 2863 ("It shall be the duty of the Secretary of the Commonwealth, prior to each primary, to ascertain the various national and State offices to be filled at the ensuing November election, and for which candidates are to be nominated at such primary, and otherwise, in accordance with the provisions of this act."); Section 905 of the Pennsylvania Election Code, 25 P.S. § 2865 ("On or before the thirteenth Tuesday preceding each primary, the Secretary of the Commonwealth shall send to the county board of each county a written notice designating all the offices for which candidates are to be nominated therein, or in any district of which such county forms a part, or in the State at large, at the ensuing primary, and for the nomination to which candidates are required to file nomination petitions in the office of the Secretary of the Commonwealth.").

2. A writ of mandamus is an extraordinary remedy that compels official performance of a ministerial act or mandatory duty, as opposed to a discretionary act. _Ko–Am Political Action Committee v. Department of State_, 760 A.2d 906 (Pa.Cmwlth.2000). It may be issued only where there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and lack of any other appropriate and adequate remedy. _Id._

3. 25 P.S. § 2876 ("The Secretary of the Commonwealth, as soon as possible after the last day fixed for the filing of nomination petitions with him, and after the last day for the withdrawal of candidates filing such nomination petitions, and after the candidates shall have cast lots for the position of their names upon the primary ballots or ballot labels, shall forward to the county board of each county a correct list of candidates of each party for the various offices, in the order in which they are to appear upon the official ballots or ballot labels, with their respective residences, giving city, borough, town or township, and post-office addresses as shown in their affidavits; and shall also at the same time notify the said candidates by mail that their names have been so certified to said county boards.").

ballot as well, for the seven (7) available seats on the court of common pleas.[4] Again, the Respondent Secretary did not certify that Judge Cohen's seat was vacant to be filled by the 2005 Municipal Primary and Municipal General Elections.

On March 28, 2005, Respondents filed an Answer and New Matter to Petitioners' petition for review. On April 4, 2005, Governor Rendell filed a Memorandum of Law as *amicus curiae*. On April 5, 2005, Petitioners filed an Answer to Respondents' New Matter, and a Motion for Judgment on the Pleadings. Both parties filed briefs in support of their respective positions.

On April 6, 2005, a hearing was conducted before this Court, and this Court issued an order granting the Petitioners' Petition for Review and Writ of Mandamus. The order also directed Respondents to direct the Election Commissioners of the City and County of Philadelphia to so prepare their machines/ballots so that there shall be eight (8) candidates for nomination and election to the Court of Common Pleas of Philadelphia County in the 2005 Municipal Primary and Municipal General Elections. Thus, this Court determined that Judge Cohen's vacancy should be filled through the 2005 Municipal Primary and Municipal General Elections, and we directed the Respondents to take the necessary steps for its inclusion in these elections.[5]

In support of the instant Petition for Review, Petitioners argued that the vacancy of Judge Cohen's seat was known in December of 2004, more than ten months prior to the November 8, 2005 municipal election. As a result, the vacancy should

be filled through the 2005 Municipal Primary and Municipal General Elections pursuant to Article 5, Section 13(a) of the Pennsylvania Constitution which provides:

> (a) Justices, judges, and justices of the peace shall be elected at the municipal election next preceding the commencement of their respective terms of office by the electors of the Commonwealth or the respective districts in which they are to serve.

PA. CONST. art. V, § 13(a).

In opposition to the Petition for Review, Respondents argued that the vacancy of Judge Cohen's seat did not occur until the effective date of Judge Cohen's resignation on February 28, 2005. As a result, the vacancy of Judge Cohen's seat did not occur more than ten (10) months preceding the 2005 Municipal General Election. Accordingly, Respondents argued that the vacancy should be filled through the 2007 Municipal Primary and Municipal General Elections and, in the interim, the seat should be filled through gubernatorial appointment pursuant to Article 5, Section 13(b) of the Pennsylvania Constitution which provides, in pertinent part:

> (b) A vacancy in the office of justice, judge or justice of the peace shall be filled by appointment by the Governor. . . . The person so appointed shall serve for a term ending on the first Monday of January following the next municipal election more than ten months after the vacancy occurs or for the remainder of the unexpired term whichever is less. . . .

PA. CONST. art. V, § 13(b).

---

4. Pursuant to an order of this Court dated April 6, 2005, one of the candidates who had cross-filed to appear on both the Democratic and Republican Municipal Primary Election ballots has withdrawn from the election. As a result, there are presently twenty-five (25) candidates to appear on the 2005 Democratic Municipal Primary Election ballot, eight (8) of

whom have cross-filed to appear on the 2005 Republican Municipal Primary Election ballot as well, for nomination and election to the available seats on the court of common pleas.

5. In the order, we also dismissed Petitioners' Motion for Judgment on the Pleadings.

Contrary to Petitioners' assertion, the vacancy in Judge Cohen's seat clearly occurred on the date that his resignation became effective on February 28, 2005. *See Simmons v. Tucker,* 444 Pa. 160, 164, 281 A.2d 902, 904 (1971) ("[A]ccordingly, a Common Pleas vacancy in the 27th Judicial District did not arise until the effective date of Judge McCune's resignation on January 4, 1971. . . .").

Nevertheless, it is equally clear that the vacancy in Judge Cohen's seat should be filled through the 2005 Municipal Primary and Municipal General Elections pursuant to the provisions of Article 5, Section 13(a) of the Pennsylvania Constitution.

█ It is well settled that, "[w]henever possible, election is the constitutionally prescribed method for filling Judgeships in Pennsylvania. The appointment procedure of section 13(b) is a stopgap to fill seats that unexpectedly fall vacant." *Barbieri v. Shapp,* 476 Pa. 513, 520, 383 A.2d 218, 222 (1978).[6] Indeed, as the Pennsylvania Supreme Court has noted:

The purpose of section 13 is to ensure that whenever possible judicial officers shall be elected by a complete electoral process. The appointive process of section 13(b) was intended to fill a judicial vacancy only until the office could again be filled by a popularly elected officer. The "ten month" provision was designed simply to insure that the electoral pro-

cess would be complete with a regularly conducted primary election, as well as a municipal election. It was not intended to frustrate the electoral process mandated in section 13(a). *Accordingly, we hold that, consistent with section 13(a), the "ten month" provision of section 13(b) does not apply when, as here, the normal election process for judicial office has commenced, even if the vacancy occurs less than ten months prior to the next election.* In that event the appointment may be only for a term equivalent to what would have been the remainder of the previous term.

*Berardocco v. Colden,* 469 Pa. 452, 459, 366 A.2d 574, 577 (1976) (footnote omitted and emphasis added). Thus, the "ten month" provision of Article 5, Section 13(b) is not an absolute, and must give way to the electoral provision of Article 5, Section 13(a) where the judicial seat can be filled through a properly executed municipal primary and municipal general election cycle.

For example, in *Barbieri,* four common pleas judges had reached the mandatory retirement age in the summer and fall of 1977, less than ten months prior to the 1977 Municipal General Election. The Pennsylvania Supreme Court considered whether these seats should be filled in the 1977 Municipal General Election pursuant to Article 5, Section 13(a), or whether they should be filled through the 1979 Munici-

---

**6.** The "stopgap" nature of the appointment process is further evidenced by the electorate's adoption of the amendment to Article 5, Section 16(b) of the Pennsylvania Constitution in the 2001 Municipal General Election. Article 5, Section 16(b) formerly provided that all "[j]ustices, judges and justices of the peace shall be retired upon attaining the age of 70 years. . . ." However, following its amendment, Article 5, Section 16(b) now provides that "[j]ustices, judges and justices of the

peace shall be retired on the last day of the calendar year in which they attain the age of 70 years. . . ." PA. CONST. art. V, § 16(b). Thus, by approving the foregoing amendment, the electorate extended the terms of office of the elected members of the judiciary who are forced to retire prior to the expiration of their terms of office and, by necessity, shortened the terms of those who are be appointed to finish those terms of office.

pal Primary and Municipal General Elections and, in the interim, through gubernatorial appointment pursuant to Article 5, Section 13(b). In favoring the electoral provisions of Article 5, Section 13(a), the Pennsylvania Supreme Court noted:

> When a judge reaches mandatory retirement age less than ten months before a municipal election, or between Election and Inauguration Days, a regularly conducted election to fill the judge's seat may be held without waiting two years for the next municipal election. The judge's mandatory retirement date is as easily and as certainly known in advance as the date upon which the regular term of a nonretiring judge will expire. Potential candidates, election officials and the voting public have sufficient notice to prepare for the election, even though the judge has not yet retired at the time the election process begins. Delaying such an election two years plainly frustrates the intent of the framers and of the People of the Commonwealth, who adopted section 13 intending that whenever possible judges are to be elected. We must therefore conclude that the "ten month" provision of section 13(b) does not apply where the end of a fixed term—expiration of the judge's elected term or attainment of mandatory retirement age—produces the vacancy.

*Barbieri*, 476 Pa. at 520–521, 383 A.2d at 222. *See also Leedom v. Thomas*, 473 Pa. 193, 199–200, 373 A.2d 1329, 1332 (1977) ("[T]his case is controlled by our decision in *Berardocco*. Here, as in *Berardocco*, although the vacancy arose less than ten months before the 1975 municipal election, the normal election process had already been 'triggered by the anticipated expiration of the incumbent's term.' 469 Pa. at [457], 366 A.2d at 576. Thus, the 'ten month' provision of section 13(b) is inapplicable.... We stated in *Berardocco* that the 'ten month' provision of Pa. Const. art. V, § 13(b) was designed 'to insure that the electoral process would be complete with a regularly conducted primary election, as well as a municipal election.' 469 Pa. at [459], 366 A.2d at 577 (footnote omitted). In this case, both the primary and municipal elections were duly conducted by the Bucks County Board of Elections....").

■ In the matter *sub judice*, the Respondent Secretary has already certified to the Philadelphia County Board of Elections the twenty-five (25) qualified candidates to appear on the 2005 Democratic Municipal Primary Election ballot, and the eight (8) qualified candidates to appear on the 2005 Republican Municipal Primary Election ballot, to be nominated for the seven (7) open seats on the Court of Common Pleas of Philadelphia County. Where, as here, the normal election process for a specific judicial office has already commenced prior to an additional vacancy in that office, and where there are a number of duly qualified candidates already seeking nomination to that office that are equal to, or in excess of, the number of vacancies to be filled by election, the electoral provisions of Article 5, Section 13(a) require that the additional vacancy be filled through the municipal election process. It is clearly within the intent and purpose of Article 5, Section 13(a) to include Judge Cohen's vacant seat in the now pending 2005 Municipal Primary and Municipal General Elections so that the twenty-five (25) qualified candidates appearing on the 2005 Democratic Municipal Primary Election ballot, and the eight (8) qualified candidates appearing on

the 2005 Republican Municipal Primary Election ballot, may seek nomination and election to the eight (8) open seats on the Court of Common Pleas of Philadelphia County.[7,8]

Accordingly, we entered the order of April 6, 2005 granting Petitioners' Petition for Writ of Mandamus, and directing Respondents to direct the Election Commissioners of the City and County of Philadelphia to so prepare their machines/ballots so that there shall be eight (8) candidates for nomination and election to the Court of Common Pleas of Philadelphia County in the 2005 Municipal Primary and Municipal General Elections.

7. See also Commonwealth v. Clark, 7 Watts & Sergeant 127, 133 (1844) ("[A] constitution is not to receive a technical construction, like a common-law instrument or a statute. It is to be interpreted so as to carry out the great principles of the government, not to defeat them; and to that end, its commands as to the time or manner of performing an act are to be considered as merely directory wherever it is not said that the act shall be performed at the time or in the manner prescribed, and no other....").

8. The Supreme Court's opinion in Jackson v. Davis, 507 Pa. 626, 493 A.2d 687 (1985), does not compel a different conclusion. In that case, a member of this Court retired nine months prior to the 1985 Municipal General Election. A prospective candidate sought a declaration that the seat on this Court should appear on the ballot for the 1985 Municipal Primary and General Elections. However, in rejecting the prospective candidate's request, the Supreme Court noted:

[A]lthough no specific commencement date can be assigned, the framers of Section 13 determined that the electoral process requires at a minimum a ten-month period to allow candidates and election officials am-

ple time to prepare for both primary and municipal elections. Berardocco, supra, at 457, 366 A.2d at 576. When, as here, an unexpected vacancy arises we are not at liberty to deviate from that determination however small the intervening time. Otherwise, the ten month provision is deprived of its purpose.

Jackson, 507 Pa. at 632, 493 A.2d at 690. Thus, in Jackson, the candidates and election officials needed the ten-month period as provided in Article 5, Section 13(b) to prepare and execute a municipal primary and municipal general election to fill the seat on this Court as there was no ongoing election for a seat on this Court at the time.

In contrast, in the instant case, there are already ongoing Municipal Primary and General Elections with a full slate of candidates endorsed by both parties to fill the seat vacated by Judge Cohen. Thus, as outlined above, the appointment provisions of Article 5, Section 13(b) must give way to the electoral provisions of Article 5, Section 13(a), and the electors of Philadelphia County must elect the qualified candidate to fill Judge Cohen's vacant seat on the Court of Common Pleas of Philadelphia County. Barbieri; Leedom; Berardocco.